**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MARY SCHIED AND DANIEL SCHIED,
ON BEHALF OF KATHERINE SHIED

DECISION AND ORDER

-v-

05-CV-6255CJS(P)

BOARD OF EDUCATION OF THE
PENFIELD CENTRAL SCHOOL DISTRICT

**APPEARANCES**

| | |
|---|---|
| For plaintiffs: | Roger G. Nellist, Esq.<br>WNY Advocacy for the Developmentally<br>Disabled, Inc.<br>590 South Ave.<br>Rochester, NY 14620<br>(716) 546-1700 |
| For defendant: | David W. Oakes, Esq.<br>Harris Beach LLP<br>99 Garnsey Road<br>Pittsford, NY 14534<br>585-419-8727 |

**INTRODUCTION**

**Siragusa, J.** This case, brought under the Individuals with Disabilities Education Act, Pub. L. No. 91-230, as amended, codified at 20 U.S.C. § 1401 *et seq*. It is before the Court on the parties' motions (## 8 & 10) for summary judgment. Each party seeks review of the administrative determination that Katherine Schied could receive a free appropriate public education in the Penfield public schools. Plaintiffs seek reversal of that decision and reimbursement for private school costs, while defendant seeks an affirmance of the determination. For the reasons stated below, the Court grants defendant's application, and, accordingly, denies plaintiffs' motion.

## BACKGROUND

Plaintiffs seek reimbursement for expenses resulting from their enrollment of their daughter, Katherine, in a private school, which they contend was necessary because the Penfield School District ("School District") could not provide the education for their daughter as recommended by the School District's Committee on Special Education ("CSE"). Defendant contends it *can* provide an appropriate free and adequate public education, and, therefore, plaintiffs' unilateral placement of their daughter in a private school was, and remains, unnecessary.

Except as indicated below, the following facts are not in dispute. Plaintiffs Mary and Daniel Shied are the parents of Katherine Shied, a student classified as a child with a disability under the meaning of the Individuals with Disabilities Education Act ("IDEA"). Katherine and her parents reside within the School District and, consequently, the School District is obligated under IDEA to offer a free and appropriate education ("FAPE") to Katherine. Katherine attended school in Penfield from the third through sixth grades. During sixth grade, she attended regular classes but, because of identified disabilities, was provided with an individualized education program ("IEP"). Both sides agree that Katherine achieved success in sixth grade. However, plaintiffs maintain that her success came at a cost of significant emotional stress, demonstrated by her need for increased medication as prescribed by her psychiatrist.

The School District created a new IEP for Katherine for seventh grade, which included many recommendations for consultant teacher services, resource room visits, counseling, testing accommodations, supplementary aides and services, and assistive technology devices. The seventh grade IEP contemplated that Katherine would attend

school at Penfield's Bay Trail Middle School ("Bay Trail"), her home school. Plaintiffs, though, contend that the seventh grade IEP failed to address Katherine's lack of progress in reading decoding. As a result, plaintiffs maintain that, for seventh grade, they opted to send Katherine to the Norman Howard School, a private school serving only special education students.

On August 30, 2004, the CSE proposed an IEP for Katherine's eighth grade school year of 2004-2005. The CSE's recommendation included four nonintegrated 12:1+1 classes for language arts, math, science and social studies and lists the program or service recommended, the starting and ending dates, the ratio, frequency, period, duration, and location. (IEP 2004-2005 at 1.) Under location for each class is listed the phrase, "Non-Integrated." (*Id*.) While plaintiffs accept the CSE's recommendation, they concluded that, based upon Mr. and Mrs. Schied's observations of the programs at Bay Trail, the School District would be unable to actually implement the non-integrated special class requirements of Katherine's IEP. However, defendant disagrees with this conclusion and states,

> [a]t the end of the Aug. 2004 CFC meeting, Plaintiff Mary Schied asked to see the program at Bay Trail but never asked to see the exact configurations that Katherine Schied would attend if her parents withdrew her from the private school and allowed her to return to the public school.

(Defendant's Statement in Response to Plaintiffs' Rule 56 Statement ¶ 53.) Katherine's parents chose, instead, to continue her at the Norman Howard School. They also requested an impartial hearing seeking reimbursement for tuition at the Norman Howard School for the period from May 6, 2004 through June 30, 2005.

In that regard, an impartial hearing was held on September 16, 17, 22 and 23, 2004. Randy Hartmann, a school psychologist and the CSE chairperson, testified before the Impartial Hearing Officer. During direct examination by counsel for the School District, Dr. Hartmann was asked, "[s]o in her 12:1:1[1] class, she wouldn't be interacting with non-disabled peers, would she?" He responded, "[n]ot in the 12:1:1 program. However, the classroom is in the context of a public school, suggest by virtue of being in a school, there are specials and lunch and there is [sic] all kinds of other activities she could be involved in that was appropriate for her." (Hearing Transcript, Vol. II (9/17/04) at 397.) Joseph Kruger, the Special Education Administrator at Penfield's Bay Trail Middle School, testified that he could meet the 12:1+1 IEP requirement for Katherine at the Bay Trail school. (Hearing Transcript, Vol. II, (9/17/04), at 290-93.) He further testified that the 12:1:1 class would not entail interaction in those academic classes with non-disabled students. (*Id*. at 397.) The IEP contemplated that she would continue to be educated at her home school, Penfield's Bay Trail Middle School.

The Hearing Officer ruled that the School District had offered a FAPE for the period May 6, 2004 through June 30, 2005. Subsequently, plaintiffs filed a petition for review of the impartial hearing decision with the New York State Education Department Office of State Review. In a decision dated January 18, 2005, the State Review Officer ("SRO") found that the School District's IEPs for 2003-2004, and 2004-2005 offered a FAPE to Katherine. Specifically, he noted that the August 30, 2004 IEP for the 2004-2005 school year, which "proposed [a] 12:1+1 special class, wherein services are

---

[1]This ratio is what appears in the transcript, however, counsels' papers refer to it as 12:1+1. The Court will use both interchangeably, as it appears from the papers, though is not specifically set out anywhere, that it refers to the ratio of students to teachers to teacher's aides.

delivered by a special education teacher and a teaching assistant in a small group instructional setting" met Katherine's needs. (Def.'s Appendix to Local Rule 56.1 Statement of Material Facts, Ex. A, at 11.)  Accordingly, the SRO dismissed plaintiffs' appeal.

## STANDARDS OF LAW

*District Court Review under IDEA*

Defendant points out the unusual procedural practice with regard to reviewing IDEA cases. (Def.'s Statement in Response to Pls.' Rule 56 Statement, at 1.) The Individuals with Disabilities Education Act, 84 Stat. 175, as amended, 20 U.S.C. § 1401 et seq.,

> [c]offers on the reviewing court the following authority: "[The] court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

*Burlington*, 471 U.S. at 369 (*quoting* 20 U.S.C. § 1415(e)(2)). Guidance for the implementation of this review can be found in *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884 (9th Cir. 1995), cited favorably by the Second Circuit in *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 (2d Cir. 2005). In *Wartenberg*, the Ninth Circuit advised that,

> [t]he statute provides an unusual formulation of the standard for district court review of an administrative decision. It tells the court to "hear additional evidence" outside the administrative record and then base its decision "on the preponderance of the evidence":
>
> > In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and,

> basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

Ordinarily one expects review of an administrative decision to be limited to the record before the administrative body, and for the court to be required to affirm if substantial evidence on the whole record supports the administrative determination. 5 U.S.C. § 706; *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993).

We have the benefit of controlling Supreme Court authority construing this unusual judicial review provision. In *Rowley*, 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034 (1982), the Court held that the preponderance of the evidence standard in the statute "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206. The requirement that the district court receive the hearing officer's record "carries with it the implied requirement that due weight shall be given to these proceedings." *Id.* The district court should review for procedural compliance with the statute, and for whether the program is reasonably calculated to enable the child to receive educational benefits.

Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 206-07.

The proposition that the courts must give "due weight" raises the question of how much weight is "due." We held in *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987), that "how much deference to give state educational agencies . . . is a matter for the discretion of the courts." Following a First Circuit decision, we held in Gregory K. that the courts are to consider the findings "carefully and endeavor to respond to the hearing officer's resolution of each material issue," but the court "is free to accept or reject the findings in part or in whole." *Id*. (*quoting Town of Burlington v. Department of Education*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd*, 471 U.S. 359, 85 L. Ed. 2d 385, 105 S. Ct. 1996 (1985)).

When exercising its discretion to determine what weight to give the hearing officer's findings, one criterion we have found useful is to examine the thoroughness of those findings. The amount of deference accorded

the hearing officer's findings increases where they are "thorough and careful." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994). We review the district court's factual determinations for clear error. *Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 588 (9th Cir. 1992). But we review de novo the ultimate determination of the appropriateness of the educational program. *Smith*, 15 F.3d at 1524.

Our opinion in *Ojai* explores the difficulty of using a summary judgment framework for what amounts to resolution of conflicting evidence on the facts. In that case, as in many under the Act, disputed issues of fact existed. Likewise, in the case at bar, the mixed question of the cause of Jeremy's school failure was disputed. Ordinarily summary judgment could not issue, because of the genuine dispute. But if the district court tried the case anew, the work of the hearing officer would not receive "due weight," and would be largely wasted. As the District of Columbia Circuit put it, "deference to the hearing officer makes sense in a proceeding under the Act for the same reasons that it makes sense in the review of any other agency action - agency expertise, the decision of the political branches . . . to vest the decision initially in an agency, and the costs imposed on all parties of having still another person redecide the matter from scratch." *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (D.C. Cir. 1988).

Judge Canby pointed out in *Ojai* that what the court had done in that case really amounted to a trial de novo on a stipulated record. *Ojai*, 4 F.3d at 1472. This puzzling procedural problem arises whenever the district court adjudicates administrative appeals, because the Federal Rules of Civil Procedure do not plainly speak to how such appeals should be handled. It is hard to see what else the district court could do as a practical matter under the statute except read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations. The district court's independent judgment is not controlled by the hearing officer's recommendations, but neither may it be made without due deference. Because this appears to be what Congress intended under the Act, we conclude that it is the right thing to do, even though it does not fit well into any pigeonhole of the Federal Rules of Civil Procedure. Though the parties may call the procedure a "motion for summary judgment" in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment.

We conclude that the district court in the case at bar did what it was supposed to. The judge received additional evidence. The parties had no more to offer. The hearing officer's report was especially careful and

>thorough, so the judge appropriately exercised her discretion to give it quite substantial deference. The judge made her own independent judgment that a preponderance of the evidence supported the hearing officer's findings and conclusions, and so reached the same conclusions.

*Capistrano,* 59 F.3d at 890-92; *see also Lillbask ex rel. Mauclaire*, 397 F.3d at 83. In *Lillbask*, the Second Circuit stated:

>As courts in this circuit have observed, a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a "pragmatic procedural mechanism" for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits. *Warton v. New Fairfield Board of Educ.*, 217 F. Supp. 2d 261, 270 (D. Conn. 2002); *see Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 & n.6 (E.D.N.Y. 1996) (analogizing the role Rule 56 motions play in allowing courts to review administrative determinations in IDEA cases to the role Rule 12(c) motions play in allowing administrative review of Social Security determinations); *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties [in an IDEA action] may call the procedure 'a motion for summary judgment' . . ., the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

*Lillbask*, 397 F.3d at 83, n.3. In addition to the statutory requirement to provide a FAPE, the statute also requires that,

>[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A) (2004). With regard to an IEP, the regulations state,

>The IEP requirements under Part B of the IDEA emphasize the importance of three core concepts: (1) the involvement and progress of each child with a disability in the general curriculum including addressing the unique needs that arise out of the child's disability; (2) the involvement of parents and students, together with regular and special education

>personnel, in making individual decisions to support each student's (child's) educational success, and (3) the preparation of students with disabilities for employment and other post-school activities.

34 C.F.R. Part 300, Appendix A, Introduction (1999).

## DISCUSSION

Plaintiffs argue that they are entitled to reimbursement of tuition for the 2004-2005 school year. (Pls.' Mem. of Law in Supp. of Mot. for Summary J. at 5.) They contend that Penfield did not offer an appropriate program to their daughter for the 2004-2005 school year in that, "[t]he 12:1:1 class as proposed in the August 30, 2004 IEP and as shown to Plaintiffs did not exist. An essential part of the concept of FAPE is that the recommended program is reasonably calculated to meet the needs of the student. The Penfield Central School District failed to meet its burden of proving that a suitable placement existed within its schools." (*Id*. at 8.) Plaintiffs argue that as a result, defendant has not met its burden of proving that it can provide a FAPE for Katherine.

Whether the School District truly offers a 12:1+1 or 12:1:1 class ratio is a material issue of fact. Plaintiffs have presented evidentiary proof that the School District does not indeed offer that type of class, and defendant has presented evidentiary proof that the School District does. Although summary judgment is issue identification, not issue resolution, in view of the unique procedural posture of this case, the Court is in a position to make a determination, after careful review of the record of the administrative proceedings, whether the School District truly did offer Katherine a FAPE in the August 30, 2004 IEP for the 2004-2005 school year. After the August 30, 2004 CSE meeting, the Schieds observed at Bay Trail a small, self-contained science class, an English

class with 25 students, a social studies class with 27 students. Their observations led plaintiffs to conclude that the English and social studies classes were not "non-integrated" as required by Katherine's IEP. (Def.'s App. to Local Rule 56.1 Statement of Material Facts, Ex. 1, at 10.) Defendant's counsel argues that, "[c]learly, individualized modifications and class groupings for KS would not be in evidence when KS was not there. The Schieds insinuate that this somehow proves that the District would not make the appropriate arrangements in accordance with the IEP should KS ever actually return to the District. This is fatuous. The testimony of School District witnesses clearly explained the obvious: that the District would make the appropriate adjustments should KS return." (In the Matter of the Impartial Hearing Concerning Katherine Schied, Requested by her Parents, Involving the Action of the Penfield Central School District, Memorandum of Law of Penfield Central School District (Oct. 12, 2004), at 22.) Plaintiffs cite to Application of the BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF ROCHESTER, for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability (No. 00-088, Aug. 23, 2001), in support of their contention that placement for Katherine at the Norman Howard School is mandated here because Bay Trail cannot comply with the IEP. That case, though, is distinguishable. There, the IEP recommended a 12:1:1 blended special class, "*i.e.*, a special class within a larger regular education class." *Id*. However, the school district placed the student into a split 4th-5th grade class consisting of two classrooms and three teachers. *Id*. Here, the IEP also recommends a 12:1:1 class, however, not blended, and the School District has represented that it stands ready to provide the recommended educational environment for Katharine. Plaintiffs

also cite Application of a CHILD WITH A DISABILITY, by his parents, for review of a determination of a hearing officer relating to the provision of educational services by the Board of Education of the City School District of Rochester (No. 95-70, Nov. 10, 1992).[2] In that case, the State Review Officer determined that, "[t]he initial issue in respondent's cross-appeal is whether the blended class placement as described in the record is consistent with the CSE's recommendation." *Id*. He determined that since the CSE recommended placement in a 15:1 class, and the school district, instead, put the student into a blended 45:3 class spread over three classrooms, including one special education classroom where the ratio would not exceed 15:1, the district did not meet the CSE's recommendation. Further, the Hearing Officer also based his determination in part on testimony from the school psychologist that, "that the boy's needs were so severe that an inordinate amount of staff time would be required in order for respondent to address the boy's needs. The school psychologist opined that the child should be placed in the Norman Howard School, as did the Principal of School No. 1 and the child's third and fourth grade teachers." *Id*. Clearly, these issues are not present in the case before the Court. First, the School District is ready to meet the CSE's placement recommendation, and second, there is not testimony here that Katherine's needs cannot be met at the Penfield school.

---

[2]Available at http://www.sro.nysed.gov/1995/95-70.htm (Sept. 15, 2006).

## CONCLUSION

Accordingly, the Court finds that defendant has met its burden of showing that it offered Katherine a FAPE for school year 2004-2005 with the August 30, 2004 IEP and is, in fact, willing to place Katherine in the recommended 12:1:1 non-blended class for academic subjects. Therefore, the Court denies plaintiffs' motion (# 8) for summary judgment and grants defendant's motion (# 10) for summary judgment, and affirms the determination of the State Review Officer in Application of a CHILD WITH A DISABILITY, by her parents, for review of a determination of a hearing officer relating to the provision of educational services by the Board of Education of the Penfield Central School District (No. 04-106, Jan. 18, 2005).

SO ORDERED.

Dated: October 11, 2006
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge